*1333 OPINION.
Moeeis:
Considering the issues in the order presented, our first question is whether the notes of $13,333.33 paid under the agreement of January 3, 1921, constituted income for 1920 or 1921. The respondent holds that this amount was income for 1920, since petitioner is on the accrual basis, and it represents the final payment on the purchase of stock sold by the agreement of September 18, 1920.
In our opinion the contract of September 18, 1920, unequivocally sold the stock in question for the sum of $110 per share. But the vendors, being at that time cognizant of a dividend declared on that date, but payable twelve days later, reserved their rights to such dividends, which had been declared out of earnings for the first eight months of 1920. At the same time the vendors agreed to bear their pro rata share of taxes due on such earnings.
The sum of $78,000 had been set aside out of earnings by the Continental Pipe Co. to meet such taxes, but the parties recognizing the impossibility of an exact estimate of the tax liability agreed that “ when the exact amount of said * * * taxes shall be ascertained at the close of the year 1920, eight-twelfths of the same shall be deemed to represent the tax applicable for the period ending August 31, 1920.” In the event that petitioner’s pro rata share of the taxes differed one way or the other it was agreed that “ the parties hereto will adjust said difference by paying the one to the other, whichever way the fact requires, the difference in cash so *1334 that first parties will in fact bear, out of said entire accrued profits, 1340/4000 of eight-twelfths of said federal taxes for the year 1920 and no more.”
Thereafter, and on January 3, 1921, the parties, with the addition of a third vendee, mutually released each other as to all claims or accountings which might arise on account of adjustments for taxes under the agreement of September 18,1920, by the vendees giving the vendor’s notes for $13,400, of which the petitioner’s share was $13,333.33. This payment is referred to as the balance on the purchase price of the stock in one paragraph, and as in settlement of all claims, accountings and rights of the parties in another paragraph. Beading the two agreements together, the conclusion is inescapable that by the agreement of January 3, 1921, the vendees intended to and did purchase the contractual rights which the vendors had reserved under the prior agreement. Prior to January 3, 1921, it was an open question whether there was a liability on the vendees or the vendors, and the best that either party could do was to conjecture with respect thereto. Under such circumstances, it is our opinion that there was nothing to accrue at the end of the taxable year, and that the final adjustment represented income for 1921. Cf. Briggs & Turivas, 11 B. T. A. 62.
Petitioner’s second contention is that the respondent has erred in excluding from invested capital for 1920 the credit balance in the improvement account. This account was created in 1913 and 1914 by credits thereto of the sums, aggregating $41,420.34, paid to the petitioner in those years by the City of Seattle for damages sustained by the petitioner under condemnation proceedings. Subsequently, and during 1913 to 1916, inclusive, petitioner charged against this account expenditures for restoration of its properties, totaling $22,-894.76, leaving a credit balance in the account of $18,525.58. In 1917 petitioner made a further charge against this account of $4,458.76, representing the cost of erecting a new dry kiln to meet the needs of its increased business; so that at the beginning of the taxable year 1920 the improvement account contained a credit balance of $14,066.82. The petitioner included this credit balance in invested capital and it now asks us to overrule the respondent’s determination that it shoxild not have been so included. To hold with petitioner on this issue would necessitate a finding that the credit balance in the improvement account is, in fact, earned surplus, representing a gain arising out of the reimbursement made to petitioner by the City of Seattle, for damages to its properties under condemnation proceedings. This we can not do, for the record is void of any evidence upon which to predicate such a finding. It may be that the total sum expended by petitioner for restoration of its properties is a *1335 fair measure of the damages which it sustained, but there is no proof that such is the fact, and, until overcome by a preponderance of the evidence, we think the presumption is entitled to prevail that the damages sustained by the petitioner are fairly measured by the amount of the reimbursement made by the City of Seattle, in which event no gain could have been derived from the transaction. Furthermore, the record is silent as to whether petitioner reduced its property asset accounts by the amount of damages sustained, or has continued to carry them at the same value on its books. If not so reduced, and we allow this balance in improvement account to be included in invested capital, there would be a duplication in petitioner’s invested capital. In the absence of evidence showing that duplication would result, we affirm the determination of the respondent.
Petitioner further alleges error in respondent’s failure to include the cost of a new dry kiln, to wit, $4,458.16, erected in 1917 in invested capital. This is the expenditure referred to in the discussion of the preceding issue. The expenditure in question is undoubtedly of a capital nature, and should have been charged to a capital asset account, but instead the petitioner charged it against the improvement account. Before charging this item against the improvement account, there was a credit balance in that account of $18,525.58; after the charge was made the credit balance stood at $14,066.82. When, therefore, the respondent eliminated from invested capital only the credit balance of $14,066.82 in the improvement account, his action resulted, indirectly though none the less effectively, in the inclusion in invested capital of the contested item. For us to say now that invested capital should be increased by $4,458.76 would result in the inclusion of the same item in invested capital twice. We find no error in respondent’s action.
The next issue was stipulated by the parties, the petitioner conceding the correctness of the respondent’s action in reducing invested capital by $6,828.86 on account of taxes for prior years.
The next error alleged is the reduction of invested capital by increasing the amount of the depreciation reserve. Petitioner took a lump sum deduction for depreciation in 1909 and 1917, but the respondent, using the straight-line method, has increased the reserve by $5,650.62. We have repeatedly held that the burden of proof is on the petitioner where error is asserted as to the ■ actions of the respondent, and that the latter’s determination is prima facie correct, and can only be disturbed by proof of the error or errors committed. Book entries are evidentiary, but not conclusive, and where the respondent has held that the book entries do not correctly reflect the condition of depreciable assets, his determination must be overcome by evidence substantiating and corroborating the book entries.
*1336 In the cases cited by petitioner in support of its position as to this issue, namely, Cleveland Home Brewing Co., 1 B. T. A. 87; Russell Milling Co., 1 B. T. A. 194, and Haugh & Keenan Storage & Transfer Co. v. Heiner, 20 Fed. (2d) 921, affirmative evidence was adduced in support of the depreciation deductions which the petitioners were there claiming. The first two cases cited supra, and Rub-No-More Co., 1 B. T. A. 228, were distinguished in Mandel Bros., 4 B. T. A. 341, wherein we held that the taxpayer did not rebut the prima facie case by the mere production of its books. The respondent’s action with respect to the depreciation reserve is, therefore, approved.
The last issue relates to respondent’s reduction of earnings available for dividends by the amount of a tentative tax. We have previously held in L. S. Ayers & Co., 1 B. T. A. 1135, that such action by the respondent was erroneous, and on the authority of that decision we sustain the petitioner.

Judgrnent will be entered under Rule 50.